UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY M. MORGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:19 CV 2358 ACL |
| ) | |
| ANDREW SAUL, ) | |
| ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Plaintiff Timothy M. Morgan brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Morgan's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded for further proceedings.

## I. Procedural History

Morgan filed his applications for benefits on June 29, 2016, claiming that he became unable to work on April 1, 2011.[1]  (Tr. 203-17.)   In his Disability Report, Morgan alleged disability due to depression, bipolar disorder, ADD, OCD, sleep apnea, restless leg syndrome, PTSD, mania, diarrhea, and suicidal thoughts.  (Tr. 233.)   His applications were denied initially.  (Tr. 130-31.)   Following an administrative hearing, Morgan's claims were denied in a written opinion by an ALJ, dated September 24, 2018.  (Tr. 13-22.)   Morgan then filed a request for review of the ALJ's decision with the Appeals Council, which was denied on July 9, 2019.  (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Morgan argues that the ALJ "failed to properly evaluate opinion evidence." (Doc. 18 at 3.)  He also contends that the ALJ "failed to properly evaluate RFC."  *Id.* at 11.

## II. The ALJ's Determination

The ALJ first found that Morgan met the insured status requirements of the Social Security Act through December 31, 2016.  (Tr. 15.)  She next found that Morgan had not engaged in substantial gainful activity since July 1, 2016, the alleged onset date.  *Id.*  The ALJ concluded that Morgan had the following severe impairments: post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, major depressive disorder, and anxiety.  *Id.*  The ALJ found that Morgan did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 16.)

---

[1] At the administrative hearing, Morgan amended his alleged onset date to July 1, 2016.  (Tr. 64.)

  The ALJ made the following determination regarding Morgan's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to no unprotected heights, no ladders ropes and scaffolds.   He is limited to simple, routine and repetitive tasks, few changes in work setting, only occasional interactions with supervisors and coworkers, and no interactions with the general public.

(Tr. 17-18.)

  The ALJ found that Morgan was unable to perform any past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy.   (Tr. 21.)   The ALJ therefore concluded that Morgan was not under a disability, as defined in the Social Security Act, from July 1, 2016, through the date of the decision.   *Id.*

  The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on June 29, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on June 29, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 22.)

### III.   Applicable Law

### III.A.   Standard of Review

  The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less

than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the

evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner

will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Morgan first argues that the ALJ erred in evaluating the opinion evidence. Specifically,

he contends that the ALJ should have given significant, if not controlling, weight to the opinions of treating psychiatrist Arturo Taca, M.D.  Morgan argues that this error resulted in an RFC determination that is not supported by the medical evidence.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians."  *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)).  The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000).  The record, though, should be "evaluated as a whole."  *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)).  The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions.  *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011).  Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value.  *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012).  Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion.  20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty.  20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

On April 17, 2016, Dr. Taca completed a "Psychiatric Assessment for Social Security Disability Claim." (Tr. 338.) Dr. Taca indicated that he had been seeing Morgan since 2008 for severe depression, bipolar disorder, PTSD, ADHD, and an anxiety disorder. *Id.* Dr. Taca explained that Morgan had lost his son in a tragic drowning accident, which fuels his depression, nightmares, anxiety, and flashbacks. *Id.* Morgan's symptoms at that time were persistent depression with anxiety, insomnia, nightmares, and flashbacks. *Id.* Dr. Taca stated that Morgan had failed several anti-depressant medications and has responded better to anti-psychotics and mood stabilizers, such as Lithium; and anti-seizure medications, such as Tegretol. *Id.* Dr. Morgan expressed the opinion that, "due to his chronic, persistent depression, [Morgan] is not able to maintain meaningful employment." *Id.*

Dr. Taca completed a "Medical Source Statement: Psychiatric" on May 21, 2018. (Tr. 473-74.) Dr. Taca listed Morgan's diagnoses as bipolar disorder, PTSD, and ADHD. (Tr. 473.) Morgan had been compliant with his medications. *Id.* Dr. Taca indicated that Morgan had required inpatient hospitalization for his mental impairments on November 5, 2017. *Id.* Dr. Taca indicated that Morgan was likely to be absent from work due to his impairments more than three times a month. *Id.* He expressed the opinion that Morgan had extreme limitations in his ability to manage his psychologically based symptoms and ability to maintain personal hygiene and attire appropriate to a work setting. *Id.* Dr. Taca found that Morgan had marked limitation in the following areas: cooperating with others; handling conflicts with others; keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness; initiating and performing a task that he understands; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities of work settings without being disruptive; working close to or with others

without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; working a full day without needing more than the allotted number or length of rest periods during the day; responding to increased demands; adapting to changes in his environment or to demands that are not already part of his daily life; distinguishing between acceptable and unacceptable work performance, and setting realistic goals.  *Id.*  Dr. Taca found that Morgan had moderate limitations in all other areas.  *Id.*

The ALJ indicated that she was assigning "little weight" to Dr. Taca's opinions.  (Tr. 20.)  The ALJ stated that Dr. Taca had seen Morgan monthly since April 2008, which "positions him well to provide an opinion on the claimant's abilities."  *Id.*  The ALJ stated that Dr. Taca's opinions, however, are "generally inconsistent with and not supported by the record as a whole." *Id.*  She found that Morgan's condition "is generally stable so long as he is consistent with his medication," and that his mental status examinations have been "generally unremarkable when he is consistent with his medication."  *Id.*  The ALJ noted that Dr. Taca's opinion that Morgan is unable to work is an issue reserved for the Commissioner.  *Id.*

If the ALJ discounts a treating physician's opinion, she should give "good reasons" for doing so.  *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007); 20 CFR § 404.1527(c)(2). The ALJ did not give good reasons here.

As the ALJ acknowledged, Dr. Taca saw Morgan monthly since April 2008 for treatment of his various mental impairments.  Dr. Taca's treatment notes during the relevant period are summarized below:

On July 1, 2016, Morgan reported that he was very upset that he had been denied disability benefits.  (Tr. 342.)  Morgan was more depressed, was experiencing more nightmares, and was crying more.  *Id.*  He stated: "I'm having more nightmares of being

killed…I'm worse than I've ever been." *Id.* On mental status exam, Morgan's mood was "worse" and his affect was "constricted." *Id.* Dr. Taca noted that he was well-groomed, cooperative and friendly, his thought process was goal directed and logical, his thoughts were absent of suicidal or homicidal intent, he did not appear to be reacting to internal or external stimuli, his fund of knowledge was good, and his insight and judgment were "fair to good." *Id.* He diagnosed Morgan with ADHD, bipolar disorder, and PTSD, and assessed a GAF score of 45-50. *Id.* Dr. Taca continued Morgan's prescriptions of Adderall,[2] Lithium, Trazodone,[3] Equetro,[4] Gabapentin,[5] and Xanax.[6] (Tr. 343.) At Morgan's next visit on August 2, 2016, Dr. Taca noted that Morgan had been admitted to the psychiatric ward at St. Anthony's Hospital after he had attempted suicide by taking an overdose of his girlfriend's sleeping pills. (Tr. 397.) Morgan stated that he was "too stressed out and couldn't handle it and I was out of my meds." *Id.* He indicated that he was unable to get his prescription of Lithium filled on the holiday weekend and became manic. *Id.* On examination, Morgan's mood was "pretty stressed out today" and his affect was constricted. *Id.* Dr. Taca's other findings and diagnoses remained unchanged. *Id.* Dr. Taca continued Morgan's medications and prescribed an additional medication for his nightmares. (Tr. 398.) In September 2016, Morgan reported that he was still experiencing nightmares, moderate to severe depression, racing mind, interrupted sleep, and

---

[2] Adderall is a stimulant medication indicated for the treatment of ADHD. *See* WebMD, http://www.webmd.com/drugs (last visited September 21, 2020).
[3] Trazodone is indicated for the treatment of depression. *See* WebMD, http://www.webmd.com/drugs (last visited September 21, 2020).
[4] Equetro is an anti-epileptic drug indicated for the treatment of seizures as well as bipolar disorder. *See* WebMD, http://www.webmd.com/drugs (last visited September 21, 2020).
[5] Gabapentin is an anti-epileptic drug indicated for the treatment of seizures as well as bipolar disorder. *See* WebMD, http://www.webmd.com/drugs (last visited September 21, 2020).
[6] Xanax is a benzodiazepine indicated for the treatment of anxiety. *See* WebMD, http://www.webmd.com/drugs (last visited September 21, 2020).

anxiety.  (Tr. 408.)  On examination, Morgan's mood was "not great" and his affect was constricted.  *Id.*  Dr. Taca continued Morgan's medications.  (Tr. 409.)  In October 2016, Morgan reported that he was not doing well.  (Tr. 526.)  He was unable to get his Equetro filled and felt depressed.  (Tr. 526.)  On exam, Morgan's mood was "terrible", and his affect was constricted.  *Id.*  Dr. Taca continued his medications.  (Tr. 527.)  In December 2016, Morgan reported no real change in his mood.  (Tr. 521.)  Dr. Taca found his affect was constricted.  *Id.*  In January 2017, Morgan was "doing pretty good," and his affect was "full and expressive."  (Tr. 517.)  At his next visit, Morgan reported he was still having nightmares of either himself or kids dying.  (Tr. 513.)  He was experiencing increased anxiety because he attended a shower that reminded him of the death of his son.  *Id.*  In March 2017, Morgan reported no "mood events" since his last visit.  (Tr. 511.)  Dr. Taca found that his mood was "pretty stable," and his affect was "expressive."  *Id.*  The following month, Morgan reported that his mood was "fine", and his affect was found to be "full and expressive."  (Tr. 509.)  In May 2017, Morgan's grandchild was in the hospital and Morgan was having flashbacks of his son who died.  (Tr. 505.)  Morgan was not sleeping and felt like he was becoming manic.  *Id.*  On exam, Morgan's mood was "not good," and his affect was constricted.  *Id.*  At his next visit, Morgan had no new mood events to report.  (Tr. 503.)  On exam, his mood was "fine", and his affect was full and expressive.  *Id.*  In September 2017, Morgan's mood was "great," and his affect was full.  (Tr. 501.)

Dr. Taca's treatment notes reveal Morgan's mood fluctuated greatly, despite his compliance with his medications.  Dr. Taca only noted two brief instances of noncompliance with medications.  First, on August 2, 2016, Morgan reported that he had been unable to get his prescription of Lithium filled the holiday weekend prior to his admission for attempting suicide.

(Tr. 397.)   Next, in October 2016, Morgan reported that he was unable to get his Equetro filled and felt depressed.   (Tr. 526.)

Morgan, however, also reported exacerbations when he was taking his medications.   For example, in September 2016, Morgan reported that he was still experiencing nightmares, moderate to severe depression, racing mind, interrupted sleep, and anxiety.   (Tr. 408.)   Dr. Taca found Morgan's affect was constricted on examination.   *Id.*   In February 2017, Morgan reported experiencing nightmares of either himself or kids dying and increased anxiety.   (Tr. 513.)   In May 2017, Morgan was having flashbacks of his son who died, was not sleeping, and felt like he was becoming manic.   (Tr. 505.)   On exam, Morgan's mood was "not good," and his affect was constricted.   *Id.*   Thus, the ALJ's finding that Morgan was "generally stable" as long as he was consistent with his medication is not supported by the record.

The ALJ also found that Morgan's mental status examinations have been generally unremarkable when he is consistent with his medications.   Dr. Taca's treatment notes reveal Morgan's mood varied considerably, and Dr. Taca frequently found Morgan's affect was constricted.   It is true that Dr. Taca consistently noted a logical, goal directed thought process, and fair to good judgment and insight.   The ALJ, however, failed to provide support for her conclusion that the symptoms of bipolar disorder, PTSD, or anxiety were inconsistent with exhibiting a normal thought process or fair judgment and insight.   This constitutes medical conjecture on the part of the ALJ.   Dr. Taca documented changes in Morgan's condition in the narrative section of his report each month, as described above.   These narrative summaries are consistent with Dr. Taca's statement that the death of Morgan's son "fuels his depression, nightmares, anxiety, and flashbacks."   (Tr. 338.)

In sum, Dr. Taca's opinions were consistent with his own notes and treatment, which included modifications to multiple medications. Dr. Taca's opinions were also not inconsistent with the other substantial evidence of record. Most significantly, Morgan was hospitalized on two occasions during the relevant period for suicidal thoughts, including one attempted suicide by medication overdose. (Tr. 351, 434.) *See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (absent information from the treating sources, it is not possible to ascertain a claimant's ability to work without engaging in medical conjecture); *Dixon v. Barnhart*, 324 F.3d 997 (8th Cir. 2003) (ALJ may not draw upon her own inferences from medical reports.)

Moreover, the record evidence here contained no other medical assessments that were "supported by better or more thorough medical evidence" than that of Dr. Taca. *See Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995). In her decision, the ALJ assigned the most weight to the opinions of the non-examining state agency psychiatrist, Raphael Smith, Psy.D. Dr. Smith expressed the opinion that Morgan can carry out simple work instructions; interact adequately with the public, peers, and supervisors; and is capable of adapting to general and usual changes in routine work settings. (Tr. 112-13.) The ALJ indicated that she was assigning "some weight" to Dr. Smith's opinions, while acknowledging that Morgan was more limited in his ability to interact with others. (Tr. 20.)

"[T]he opinions of nonexamining sources are generally...given less weight than those of examining sources." *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) quoting *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008)). "These assessments alone cannot be considered substantial evidence in the face of the conflicting assessment of a treating physician." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citing *Henderson v. Sullivan*, 930 F.2d 19, 21 (8th Cir. 1991)).

Consequently, the undersigned finds that the ALJ failed to provide "good reasons" for assigning little weight to Dr. Taca's opinions. Dr. Taca was the only treating mental health provider to provide an opinion regarding Morgan's mental limitations. Given Dr. Taca's specialized field of practice and the length and nature of his treatment history with Morgan, he was in the best position to render an opinion as to Morgan's limitations. Dr. Taca provided a sufficient explanation in support of his opinions, and his treatment notes lend further support.

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *See Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)).

The Court, therefore, finds that the RFC formulated by the ALJ is not supported by substantial evidence. *See Leiwe v. Astrue*, No. 4:06 CV 196 DDN, 2007 WL 5117110, at *8 (E.D. Mo. Feb. 26, 2007) (holding that the ALJ must have some evidence to support her RFC findings, even if the ALJ has lawfully rejected claimant's evidence). The ALJ pointed to no evidence in the record to support her finding that Morgan could perform a range of simple work.

For the reasons discussed above, the ALJ's determination is not based upon substantial evidence on the record as a whole, and this matter will be reversed and remanded. Upon remand, the ALJ shall properly consider the opinion evidence, obtain additional medical evidence regarding Morgan's mental limitations if necessary, and formulate a new RFC based on the record as a whole.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of September, 2020.